## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| **NAVIGARE CRUISE PARTNERS, LLC** )<br>)<br>**Plaintiff** )<br>)<br>**v.** )<br>)<br>**MICHAEL K. LAZAROFF** )<br>)<br>and )<br>)<br>**JAZZ CRUISES, LLC** )<br>**f/k/a ENTERTAINMENT CRUISE** )<br>**PRODUCTIONS-JAZZ, LLC** )<br>)<br>**Defendants** )<br>_____) | Case No. _____<br><br>**JURY TRIAL REQUESTED** |

## VERIFIED COMPLAINT

Plaintiff, Navigare Cruise Partners, LLC ("NCP" or "Plaintiff"), by and through its undersigned counsel, respectfully brings this Complaint for injunctive relief and monetary damages against Defendants, Michael K. Lazaroff and Jazz Cruises, LLC f/k/a Entertainment Cruise Productions-Jazz, LLC ("JCL") (collectively, "Defendants"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. This action arises from a dispute between the members and a manager of a limited liability company, and specifically, Plaintiff's efforts to move the company's and its own business forward in the theme cruise industry in the face of irrational and improper obstruction from Defendants.

2. NCP and JCL organize and produce theme cruises. NCP and JCL each hold equal, 50% membership interests in ECP Administration LLC ("ECPA"), a limited liability company formed to provide support and administrative services for cruises operated by NCP or JCL. Lazaroff is (on information and belief) the sole member of JCL, and is a manager of ECPA.

3. Credit card payments made by guests on the cruises serviced by ECPA are processed pursuant to a Merchant Account Agreement which Defendants established with Braintree, a division of PayPal Holdings, Inc. and/or with PayPal directly ("Braintree/PayPal").

4. Lazaroff personally guaranteed the merchant accounts of two of NCP's upcoming cruises. In exchange for his personal guaranty and in consideration for the right to process its credit card payments for upcoming theme cruises through the existing Merchant Account Agreement(s), NCP has made substantial installment payments to Lazaroff, and will continue to make such monthly payments through March 2022.

5. In August 2021, a dispute arose when Lazaroff attempted to manufacture disputes between the managers and members of ECPA and began making erratic and unreasonable demands to renegotiate the parties' agreements.

6. Lazaroff escalated the dispute by: (1) instructing Braintree/PayPal – without any justification – to place a hold and/or reserve on the processing of credit card payments made to NCP; and (2) threatening to approach other credit card processors to instruct them not to do business with NCP, in blatant contravention of his fiduciary duties and the express terms of the ECPA operating agreement.

7. Cutting off the processing of approximately $1.88 million in outstanding payments jeopardizes ECPA's and NCP's ability to produce the upcoming theme cruises, and further

threatens to cause irreparable damage to both Plaintiff and to ECPA. Defendants' actions have already caused substantial damages to Plaintiff.

## PARTIES

8. Plaintiff NCP is a Delaware limited liability company, with its principal office in Bethesda, Maryland. NCP holds a 50% membership interest in ECPA. For diversity jurisdiction purposes, NCP is a citizen of the states where its members, are citizens – namely, Florida (the state of citizenship of Joseph F. Fairchild), Maryland (the states of citizenship of Christopher Hearing and Greg Laubach [the members of Navigare Entertainment Partners, LLC and Navigare Advisory Partners, LLC]; Mark L. Giarraputo; James Gardiner; Robert N. Cohen; Stephen A. and Mary Kramer; and Chris Miller (a member of Mid-Atlantic Loans, LLC)); Michigan (the state of citizenship of Bradley Pavlik and Aubrey Brewis [the members of A&B Cruise Partners, LLC]); and Virginia (the state of citizenship of Grayson Hanes, a member of Mid-Atlantic Loans, LLC).

9. Defendant Lazaroff is an individual domiciled in Missouri. For diversity jurisdiction purposes, Lazaroff is a citizen of Missouri based on his place of domicile. Mr. Lazaroff is a manager of ECPA.

10. Defendant JCL is a Missouri limited liability company, with its principal place of business in Clayton, Missouri. For diversity jurisdiction purposes, JCL is a citizen of Missouri based on the state where its single member, Michael Lazaroff is a citizen. JCL holds a 50% membership interest in ECPA.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1332(a) in that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

3

12. In this case seeking injunctive relief, the amount in controversy is measured by the value of the object of the litigation. Here, the value of the object of the litigation to Plaintiff is at least the $1.88 million in outstanding credit card payments that Lazaroff and JCL have cut off.

13. Venue is proper in this Court because the Court has personal jurisdiction over Defendants, who are each citizens of Missouri.

## FACTS COMMON TO ALL COUNTS

### A. The Parties and ECPA.

14. ECPA is a Delaware limited liability company, which was organized on July 11, 2013.

15. ECPA's operations, along with the rights and obligations of its members and managers, are set forth in the operative Third Amended and Restated Operating Agreement ("Operating Agreement"). (A true and accurate copy of the current Operating Agreement is attached as **Exhibit A** hereto.)[1]

16. ECPA is comprised of two members, each holding 50% membership interests – JCL and NCP.

17. Lazaroff is a manager of ECPA, holding one managerial vote. Brian Rachko, Christopher Hearing, and Gregory Laubach are also managers of ECPA, each holding one managerial vote.

18. JCL and NCP are each engaged in organizing and producing various theme cruises. ECPA provides support services to certain cruises operated by JCL and NCP. (*See* Ex. A, Art. III.)

---

[1] Pursuant to the Operating Agreement, Delaware law governs this dispute. (*See* Ex. A, § 13.3; *see also id.,* Article II (defining "State" as the State of Delaware)).

**B. The Parties Negotiated Specific Restrictive Covenants Governing their Conduct with Respect to ECPA.**

19. The current Operating Agreement was negotiated in 2021, and was executed and made effective as of April 12, 2021. (*See* Ex. A, recitals thereto.)

20. Among other obligations, the parties agreed that for a period spanning from the effective date of the Operating Agreement until two years after separating from ECPA, no party would "interfere with or cause to be terminated any **existing or prospective contract or agreement of the Company**." (*Id.*, § 11.2) (emphasis added).

21. By its express terms, this provision of the Operating Agreement is made applicable to all *members* of ECPA as well as former members. (*Id.*)

22. Moreover, the parties agreed that Lazaroff would be similarly bound by this non-interference provision. Lazaroff not only executed the Operating Agreement in his capacity as manager of JCL, but also signed separately to "acknowledge[] that he has an indirect interest in the business and affairs of" ECPA. (*Id.*, p. 29.) By signing in his personal capacity, Lazaroff expressly agreed "to be bound by the terms and conditions set forth in Article 11." (*Id.*)

23. The Operating Agreement contains an arbitration provision. (*See* Ex. A, § 13.15.) However, the covenant that Defendants would not "interfere with or cause to be terminated any existing or prospective contract or agreement of the Company", as described in Section 11.2, is not within the scope of the arbitration provision. *See* Ex. A, § 11.5 (stating the arbitration provision contained in § 13.15 "shall not apply to this Article XI[.])"

**C. Defendants Agreed to Provide Access to their Merchant Accounts, and Lazaroff Personally Guaranteed Credit Card Payments.**

24. As set forth in the Operating Agreement, the parties also agreed to certain terms regarding the processing of credit card payments for the cruise guests and customers.

5

25. The parties agreed that credit card payments made by guests for cruises which ECPA services – including two upcoming NCP-organized cruises, the Star Trek: The Cruise '22 and The 80s Cruise '22 – will be provided by a Braintree/PayPal merchant account established by ECPA and Lazaroff. (Ex. A, § 12.2(a).) Stated differently, the members agreed that ECPA and NCP would have the right to utilize the credit card processing arrangements established by ECPA and Lazaroff.

26. The parties further expressly agreed that JCL and Lazaroff would abide by the terms of their agreement with Braintree/PayPal, including that Lazaroff would personally guarantee the accounts. (*Id.*, §12.2(a)(i).)

27. In consideration and exchange for his personal guarantee of the credit card payments, NCP agreed to pay certain credit card guarantee fees to Lazaroff.

28. Through February 2021, NCP had paid $200,000 to Lazaroff, and agreed to make a total of $108,333 in additional monthly payments. (*Id.*, § 12.2(b).)

29. Importantly, the parties expressly agreed and acknowledged that NCP is currently seeking other credit card processors for future cruises, and that it was free to do so. (*Id.*, § 12.2(d),(e).)

30. Moreover, the Operating Agreement provides that, if Braintree/PayPal requests a cash reserve at any time in connection with the credit card processing services, NCP would be free to seek processing services from another provider. (*Id.*, § 12.2(g).)

**D. Defendants Have Interfered with the Credit Card Processing Services, and Have Jeopardized the Future of ECPA and NCP.**

31. Beginning in or around August 2021, disputes arose among the members and managers of ECPA when Lazaroff (on behalf of JCL and in his personal capacity) attempted to

negotiate more favorable terms for themselves, for no other reason than their own potential financial benefit.

32. Defendants concocted a false theory that NCP was in a financially unstable position, and used this incorrect premise as a pretext for attempting to restructure the parties' business relationship. In a misguided attempt to exert leverage over NCP, Defendants have jeopardized both NCP's and ECPA's future by threatening to cut off access to all funds and accounts receivable.

33. Specifically, on or around August 18, 2021, Lazaroff – purportedly on behalf of "Entertainment Cruise Productions," but in reality acting solely in his own and JCL's interests – unilaterally requested that Braintree/PayPal "hold in reserve all funds that are due to be processed from" JCL's and NCP's upcoming 2022 cruises. (A true and accurate copy of the August 18-20, 2021 email chain is attached as **Exhibit B** hereto.) Lazaroff alleged that the reason for the requested hold was to "bolster its reserves," but he also expressly acknowledged that the hold would allow "time to complete our restructuring" – presumably referencing Defendants' attempted forced restructuring of the parties' relationship. (*Id.*)

34. On August 20, 2021, after speaking with Lazaroff, Braintree/PayPal placed the requested hold on the accounts. (*Id.*) Just one hour later, Lazaroff gloated to one of NCP's attorneys (among others) that he had "the ability to remove the hold. Please give me a reason to do so." (*Id.*)

35. At all relevant times leading up to and following Defendants' actions with respect to Braintree/PayPal, NCP and its representatives stressed that 50% of the membership interest and 50% of the managerial vote did not approve of the credit card reserve, and emphasized that doing so would cut off all revenues for NCP's upcoming cruises.

7

36. In response, Lazaroff revealed the only logical explanation for his conduct – he desired to offer a personal loan (on his own terms, and which would bear interest inuring solely to Lazaroff's benefit) to NCP and its affiliated entities to secure funding for its operations after its access to the credit card payments was frozen.

37. Defendants' conduct with respect to the credit card processing arrangement is unprecedented in ECPA's history, and serves no legitimate business purpose for ECPA.

38. Defendants' misconduct did not end with Braintree/PayPal. On August 20, 2021, Lazaroff threatened to contact a separate credit card processor, CMS, and threatened to allege that NCP planned to divert funds by having CMS process remaining guest charges for upcoming cruises. (A true and accurate copy of the August 20 email correspondence is attached as **Exhibit C** hereto.) This insinuation is not only completely false, but the result of communicating this falsehood to CMS would unquestionably damage NCP's ability to obtain credit card payment processing from CMS or likely other credit card processors.

**E. The Harm to NCP.**

39. Defendants' actions to freeze NCP's – and, by extension, ECPA's – ability to access the funds from credit card payments has caused significant damage to NCP (and to ECPA itself), and threatens to cause ongoing and irreparable injuries to both entities as well as their planned and future theme cruises.

40. Preventing NCP from accessing the approximately $1.88 million in outstanding credit card payments to be processed by Braintree/PayPal jeopardizes NCP's ability to meet its financial obligations and to continue to make preparations and expenditures for its upcoming 2022 cruises. If the cruises cannot go forward, then ECPA will also be deprived of the opportunity to

provide its services to NCP's cruises, and NCP could be left unable to make monthly payments to ECPA for its services rendered

41. The potential halting of NCP's 2022 cruises will also cause substantial and irreparable harm to NCP's business reputation and its hard-won customer goodwill.

42. Moreover, Defendants pretextual basis for seeking to place a hold on the credit card processing accounts may become a self-fulfilling prophecy: while Defendants falsely suggested to Braintree/PayPal that NCP was in a fragile economic position, by instituting a hold on the payments, NCP may ultimately be left without access to necessary funds for its operations, and the longer the hold continues, the more perilous the financial condition may become.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT
### (Against Lazaroff)

43. Plaintiff incorporates by reference Paragraphs 1 through 42, as if fully repeated herein.

44. The ECPA Operating Agreement, and specifically Article 11, is a valid and enforceable contract entered into between and executed by NCP and Lazaroff. Lazaroff signed the Operating Agreement in his personal capacity and expressly agreed to be bound by the terms set forth in Article 11.

45. Moreover, regardless of any express acknowledgment as to Lazaroff's capacity, the terms set forth in the Operating Agreement memorialize the parties' agreement that Lazaroff would be bound by those covenants. Lazaroff was also aware of and assented to those terms through his personal involvement in ECPA's operations, and acceptance of the credit card guarantee fee payments.

46. Under Section 11.2 of the Operating Agreement, the parties (including Lazaroff) agreed not to interfere with or cause to be terminated any existing or prospective contract or agreement of ECPA. Moreover, under Section 12.2 of the Operating Agreement, Lazaroff agreed to provide a personal guaranty for the Merchant Accounts used for processing NCP's and ECPA's guests' credit card payments, and Defendants further agreed that NCP would be free to seek alternative credit card processing services if Braintree/PayPal requested a cash reserve. As a member of ECPA and a party to the Operating Agreement, NCP is a party to and protected by Lazaroff's covenant not to interfere with ECPA's contracts.

47. NCP fully and satisfactorily performed its obligations under the Operating Agreement, including under Section 12.2(b) by making credit card guarantee fee payments to Lazaroff.

48. Lazaroff breached his obligations under the Operating Agreement. Specifically, Lazaroff breached Section 11.2 by interfering with both the current Braintree/Paypal Merchant Account Agreement to which both ECPA and NCP are also parties and/or beneficiaries, through baselessly requesting a hold and reserve be put in place, thereby preventing any funds from being released to ECPA or NCP. Moreover, Lazaroff has (or is threatening to imminently) interfered with NCP's and/or ECPA's prospective credit card processing arrangements with CMS or others.

49. As the result of Lazaroff's breaches of his contractual obligations, NCP has been directly injured in an amount to be proven at trial, including lost profits from opportunities that will be disrupted by Lazaroff's actions, reputational damage and harm to NCP's customer goodwill, and increased costs for NCP to continue its business operations.

50. Pursuant to Section 11.5 of the Operating Agreement, NCP also requests an award of its attorneys' fees incurred in this action.

## COUNT II: BREACH OF CONTRACT
### (Against JCL)

51.     Plaintiff incorporates by reference Paragraphs 1 through 50, as if fully repeated herein.

52.     The ECPA Operating Agreement, and specifically Article 11, is a valid and enforceable contract entered into between and executed by NCP and JCL.

53.     Under Section 11.2 of the Operating Agreement, the parties (including JCL) agreed not to interfere with or cause to be terminated any existing or prospective contract or agreement of ECPA.  Moreover, under Section 12.2(g) of the Operating Agreement, JCL agreed that NCP would be free to seek alternative credit card processing services if Braintree/PayPal requested a cash reserve.

54.     NCP fully and satisfactorily performed their obligations under the Operating Agreement.

55.     JCL breached its obligations under the Operating Agreement.  Specifically, JCL (through its manager, Lazaroff) breached Section 11.2 by interfering with the current Braintree/Paypal Merchant Account Agreement to which both ECPA and NCP are parties and/or beneficiaries, through baselessly requesting a hold and reserve be put in place, thereby preventing any funds from being released to ECPA or NCP.  Moreover, JCL has (or is threatening to imminently) interfere with NCP's and/or ECPA's prospective credit card processing arrangements with CMS or others.

56.     As the result of JCL's breaches of its contractual obligations, NCP has been directly injured in an amount to be proven at trial, including lost profits from opportunities that will be disrupted by JCL's actions, reputational damage and harm to NCP's customer goodwill, and increased costs for NCP to continue its business operations.

57. Pursuant to Section 11.5 of the Operating Agreement, NCP also requests an award of its attorneys' fees incurred in this action.

## COUNT III: BREACH OF FIDUCIARY DUTY
### (Against Lazaroff)

58. Plaintiff incorporates by reference Paragraphs 1 through 57, as if fully repeated herein.

59. As a manager of ECPA, Lazaroff owes fiduciary duties to both ECPA and its members, including NCP.

60. These fiduciary obligations include duties of care and loyalty.

61. Lazaroff breached these duties by failing to act reasonably and in the best interests of ECPA and NCP.

62. For one, Lazaroff has acted in direct contravention of the fiduciary obligations set forth in the express terms of the Operating Agreement, including Article 11, by interfering and attempting to interfere with NCP's and/or ECPA's current credit card process agreements (under which they are both parties and beneficiaries to Defendants' merchant account agreements) or their prospective arrangements with other credit card payment processors.

63. Lazaroff has also breached his fiduciary duty of loyalty by failing to act in good faith and in the best interest of NCP. Lazaroff's actions with respect to obtaining a hold and reserve on NCP's credit card payments for upcoming cruises served no legitimate purpose for NCP or ECPA, and benefited only Lazaroff as he sought to extort a favorable restructuring of the ECPA activities.

64. Indeed, Lazaroff ultimately revealed the only logical explanation for his conduct – his desire to offer a personal loan (on his own terms, which would include interest inuring solely

to Lazaroff's benefit) to NCP and its affiliated entities to secure funding for its operations after its access to the credit card payments was frozen.

65. As the result of Lazaroff's breaches of his fiduciary obligations, NCP has been directly injured in an amount to be proven at trial, including lost profits from opportunities that will be disrupted, reputational damage and harm to NCP's customer goodwill, and increased costs for NCP to continue its business operations.

66. Lazaroff's actions have jeopardized both NCP's and ECPA's future by threatening to cut off access to all funds and accounts receivable.

67. Pursuant to Section 11.5 of the Operating Agreement, NCP also requests an award of its attorneys' fees incurred in this action.

### COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
**(Against All Defendants)**

68. Plaintiff incorporates by reference Paragraphs 1 through 67, as if fully repeated herein.

69. NCP had a reasonable probability of locating a favorable business opportunity through securing an alternative credit card payment processor in August 2021. Indeed, the ECPA Operating Agreement expressly authorized NCP to seek an alternative processor after Braintree/Paypal instituted a reserve.

70. Defendants intentionally interfered with this business opportunity. Specifically, on the very same day that Defendants obtained an unwarranted and improper hold and reserve placed on the Braintree/Paypal account, Defendants also threatened to contact CMS and/or other credit card payment processors to dissuade them from doing business with NCP, including by levying false accusations that NCP would seek their assistance in "diverting" funds.

71. As the direct and proximate cause of Defendants' intentional and tortious interference, NCP has been unable to secure alternative processing for its outstanding credit card payments. This lack of access to necessary funds threatens to significantly hamper NCP's ability to move forward with upcoming theme cruises.

72. As the result of Defendants' interference, NCP has been injured in an amount to be proven at trial, including lost profits from opportunities that will be disrupted by Defendants' actions, reputational damage and harm to NCP's customer goodwill, and increased costs for NCP to continue its business operations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Navigare Cruise Partners, LLC respectfully requests the following relief:

1. That the Court enter temporary, preliminary, and permanent injunctive relief to enjoin Defendants from further interference with the Braintree/Paypal Merchant Account Agreement or other credit card payment processing or other contractual agreements as described herein;

2. That the Court award monetary damages in an amount to be proven at trial, in favor of both NCP and ECPA, and each in excess of $75,000;

3. That the Court award punitive and/or exemplary damages based on Defendants' malicious and intentional misconduct; and

4. That the Court award Plaintiff its reasonable attorneys' fees incurred in this action, pursuant Section 11.5 of the Operating Agreement.

**[signatures on following page]**

Date: August 30, 2021            Respectfully submitted,

                             DOWD BENNETT LLP

                             By: /s/ *John D. Comerford*
                                   John D. Comerford #60164MO
                                   Matthew D. Ampleman #69938MO
                                   7733 Forsyth Blvd., Suite 1900
                                   St. Louis, Missouri 63105
                                   (314) 889-7300 (phone)
                                   (314) 863-2111 (facsimile)
                                   jcomerford@dowdbennett.com
                                   mampleman@dowdbennett.com

                             MILES & STOCKBRIDGE, P.C.

                             By: /s/ *J. Stephen McAuliffe, III*
                                   J. Stephen McAuliffe, III (D. Md #08595)
                                   (*pro hac vice* application forthcoming)
                                   Matthew M. May (D. Md. #21298)
                                   (*pro hac vice* application forthcoming)
                                   11 N. Washington Street, Suite 700
                                   Rockville, Maryland 20850
                                   (301) 762-1600 (phone)
                                   (301) 517-4829 (facsimile)
                                   smcauliffe@milesstockbridge.com
                                   mmay@milesstockbridge.com

                             *Attorneys for Plaintiff Navigare Cruise Partners, LLC*

## VERIFICATION

I, Christopher Hearing, declare:

1. I am member of Navigare Advisory Partners, LLC, manager of Navigare Cruise Partners, LLC.

2. I verify that the foregoing Verified Complaint for and on behalf of Navigare Cruise Partners, LLC was duly prepared under my direction with the assistance of counsel; that the facts stated therein have been assembled by authorized employees and counsel for Navigare Cruise Partners, LLC; and that the allegations therein are true and correct to the best of my knowledge, information, and belief.

3. I declare under penalty of perjury that the foregoing is true and correct.

_____

Executed in Centreville, Virginia on August 30, 2021.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2021 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ John D. Comerford*