UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NAVIGARE CRUISE PARTNERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-1076 RLW |
| | ) | |
| MICHAEL K. LAZAROFF, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Navigare's Cruise Partners LLC's ("NCP")

Motion for Temporary Restraining Order ("TRO") against Defendants Michael K. Lazaroff and

Jazz Cruises, LLC ("JCL").  (ECF No. 5).  Defendants oppose the Motion, which is fully briefed.

The Court has reviewed the Verified Complaint ("Complaint"), the Motion and its supporting

memoranda and exhibits, including the agreement at issue, as well as Defendants' Memorandum

in Opposition and exhibits, including the Declaration of Defendant Lazaroff.  The Court originally

set the Motion for a TRO hearing on September 7, 2021, but after reviewing Defendants'

Memorandum in Opposition, the Court vacated the hearing and ordered Plaintiff to file a reply

memorandum, which it did.  Upon review of the record, the Court finds a hearing is not required

in this matter.  For the reasons that follow, Plaintiff's Motion for TRO is denied.

## I. BACKGROUND

Plaintiff NCP filed this action on August 30, 2021.[1]  The dispute involves members and

managers of a limited liability company, ECP Administration, LLC ("ECPA").  According to the

---

[1]There is federal diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a).
The Complaint alleges Plaintiff and Defendants are citizens of different states, and the amount in
controversy exceeds $75,000.00, exclusive of interests and costs.

Complaint, Plaintiff NCP and Defendant JCL organize and produce theme cruises.  (ECF No. 1 at 2).  ECPA was organized to provide support services to certain cruises operated by NCP and JCL.  (Id. at 2, 4).  ECPA has two members, NCP and JCL, and they each hold 50% membership in the LLC.  Defendant Lazaroff, the sole member of JCL, is a manager of ECPA, along with three other managers. (Id. at 2).  ECPA operates under a Third Amended and Restated Operating Agreement ("Operating Agreement"), which was made effective April 12, 2021, and is attached as an exhibit to the Complaint.  Defendant Lazaroff not only signed the Operating Agreement in his capacity as manager of JCL, but he also signed the agreement in his personal capacity.  (Id. at 5).

Under the Operating Agreement, the parties agreed to terms regarding the processing of credit card payments from cruise guests and customers.  (Id. at 5).  The parties agreed that credit card payments made by guests of NCP cruises, specifically The Star Trek Cruise '22 and The 80s Cruise '22, would be provided by a Braintree/Paypal merchant account established by ECPA and Defendant Lazaroff.  (Id. at 6).  The parties further agreed that JCL and Defendant Lazaroff would abide by the terms of the agreement with Braintree/PayPal, which included Defendant Lazaroff's personal guarantee of the merchant account.  (Id.)  In exchange, NCP was obligated to pay Defendant Lazaroff over $300,000 in credit card guarantee fees. NCP has paid Defendant Lazaroff $200,000 in fees, and it owes an additional $108,000, which the company is paying in monthly installments.  The Operating Agreement acknowledged NCP was seeking other credit card processors for future cruises, which it is free to do.  (Id. at 6).

According to the Complaint, a dispute arose among the members and managers of ECPA, when Defendants "attempted to negotiate more favorable terms for themselves, for no other reason than their own potential financial benefit."  (Id. at 6-7).  It is undisputed that on August 18, 2021, Defendant Lazaroff requested Braintree/Paypal to hold in reserve all funds in the merchant account that were due to be processed from guests and customers of The Star Trek Cruise '22 and The 80s

Cruise '22.  On August 20, 2021, Braintree/Paypal placed these funds on the requested hold, and NCP was unable to access funds for its two upcoming cruises.

The Complaint also alleges that on August 20, 2021, Defendant Lazaroff threatened to contact a separate credit card processor, CMS, and tell them NCP planned to divert funds "by having CMS process remaining guest charges for upcoming cruises."  (Id. at 8).  According to Plaintiff, this information was false and would damage NCP's ability to obtain credit card payment processing from CMS or other credit card processors. (Id.)

Plaintiff alleges Defendants' conduct violated the terms of the Operating Agreement. Under the Operating Agreement, no party is to "interfere with or cause to be terminated any existing or prospective contract or agreement of [ECPA]."  (ECF No. 1, Ex. A, § 11.2.)[2]  Plaintiff contends Defendants breached their obligations under Section 11.2 of the Operating Agreement by "interfering with both the current Braintree/Paypal Merchant Account Agreement to which both ECPA and NCP are also parties and/or beneficiaries, through baselessly requesting a hold and reserve be put in place, thereby preventing any funds from being released to ECPA or NCP."  (ECF No. 1 at 10, 11).  Plaintiff also alleges Defendants "[have] (or [are] threatening to imminently) interfered with NCP's and/or ECPA's prospective credit card processing arrangements with CMS or others."  (Id.)

NCP brings the following four counts against Defendants Lazaroff and JCL: Breach of Contract against Defendant Lazaroff (Count I); Breach of Contract against JCL (Count II); breach of fiduciary duty against Defendant Lazaroff (Count III); and Tortious Interference with Business Relations against Defendants Lazaroff and JCL (Count IV).  For damages, the Complaint alleges

---

[2] The Operating Agreement has an arbitration clause.  Plaintiff argues this dispute arises under § 11 and is expressly excluded from the arbitration clause.  Defendants argue this dispute arises under § 12, not § 11, and therefore, the arbitration clause does apply.  Defendants, however, have not filed a motion to compel arbitration, and the Court need not decide arbitrability for purposes of this Motion.

the hold on the Braintree/PayPal merchant account caused significant damage to NCP, in that the company was unable to access $1.88 million in outstanding credit card payments, which interfered with the company's ability to meet its financial obligations and expenditures for its two upcoming 2022 cruises.  NCP states with a hold in place, it is unable to make monthly payments to ECPA for its services.  Moreover, if the Star Trek Cruise '22 and The 80s Cruise '22 could not go forward, it would cause substantial and irreparable harm to NCP's business reputation and customer goodwill.

In its Motion for TRO, Plaintiffs ask that the Court order Defendants to immediately take all steps necessary to remove the hold and/or reserve in place with Braintree/PayPal.  Plaintiff also asks the Court order that Defendants be enjoined and restrained from: (1) pursuing any hold and/or reserve with Braintree/PayPal with respect to NCP and/or ECPA going forward; (2) contacting or otherwise interfering with any other credit card processing service in relation to NCP or ECPA; and (3) contacting or otherwise interfering with any other existing or prospective contractual relationship in relation to NCP or ECPA.   NCP also seeks a waiver of any bond requirement.

Defendants JCL and Lazaroff filed a Memorandum in Opposition to Plaintiff's Motion for TRO.   Defendants admit a hold was placed on the Braintree/PayPal merchant account, but according to Defendants, on the morning of August 30, 2021, Defendant Lazaroff requested that the hold on the account be lifted as to Plaintiff's cruises, and indeed, Braintree/PayPal lifted the hold by 6:00 p.m. that evening.  Defendants state that Defendant Lazaroff notified Plaintiff of the request to lift the hold the morning of August 30, 2021, but Plaintiff went ahead with filing suit and requesting the TRO.

Defendant Lazaroff filed a declaration, under penalty of perjury, in which he stated that he initially requested the hold because he was worried about the resurging pandemic and its effect on cruises next year, and because of his concerns regarding the financial well-being of NCP.  He

4

states that he had a change of mind "because the situation caused employee who worked for all of the cruises to be placed in an awkward situation."  (ECF No. 22, Ex A).  Defendant Lazaroff states that Braintree/PayPal placed the hold on the account without registering any complaint that the hold was a violation of the terms and conditions of the merchant agreement, and NCP is now free to access the funds in the account.  Therefore, according to Defendants, Plaintiff has not met its burden of showing it is entitled to a TRO, because it has not shown it has suffered any harm, let alone irreparable harm, because the hold has been lifted.

Plaintiff filed a Reply Memorandum in support of its Motion.  Plaintiff argues a defendant's "voluntary cessation of improper conduct does not moot case, particularly where the defendant may return to the very same improper conduct in the future."  (ECF No. 26 at 2).  Plaintiff points to the fact that Defendant Lazaroff has not promised to refrain from pursuing such holds in the future, and he has stated a hold may become necessary depending on the course of the COVID-19 pandemic.  Plaintiff also notes that Defendants neither acknowledged Defendant Lazaroff's threats to contact other third-party credit card processors to discourage them from engaging in business with NCP, nor offered any assurance that he will not follow through on such threats.

## II. DISCUSSION

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Kansas City S. Trans. Co., Inc. v. Teamsters Local Union # 41, 126 F.3d 1059, 1066 (8th Cir. 1997) (citation omitted).  In determining whether to issue a TRO, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The inquiry is "whether the

balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase Sys., Inc., 640 F.2d at 113. While the likelihood of success is the most important factor, Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011), failing to demonstrate irreparable harm is a sufficient ground to deny a TRO.  Phyllis Schlafly Rev. Trust v. Cori, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted).

Irreparable harm occurs "when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). Possible or speculative harm is not enough, but rather the plaintiff must show a significant risk of harm exists. See Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004).  In other words, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist., 696 F.3d 771, 778 (8th Cir. 2012).

Plaintiff fails to show it will experience irreparable harm if an injunction is not issued.  It is evident to the Court that the impetus for Plaintiff's suit and Motion for TRO was the hold Defendant Lazaroff placed on the Braintree/PayPal account and the fact NCP could not access funds to meet its financial obligations and prepare for its two upcoming cruises.  But it is undisputed Defendant Lazaroff lifted the hold, and Plaintiff now has access to the funds it needs. Plaintiff did not produce any evidence of the damages it sustained, but based on the record before the Court, it would seem Plaintiff was in a precarious financial position for approximately ten days, but now the company is in no different position than it was in before the hold was placed.

Plaintiff acknowledges that the hold was lifted in its Reply Memorandum, but it argues its request for a TRO is not moot because Defendants "must satisfy a heavy burden to demonstrate

that their conduct will not occur in the future." (ECF No. 26 at 3) (quotation omitted). According to Plaintiff, "Defendants entirely fail to meet that burden in this case."  (ECF No. 26 at 4).  Plaintiff is confusing the issue of Article III mootness with irreparable harm.  The cases to which it cites, Ctr. for Special Needs Tr. Admin., Inc. v. Olson, 676 F.3d 688, 697 (8th Cir. 2012) and Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000), involved review of decisions on summary judgment as to mootness of the causes of action.  Here, Defendants have not filed a motion to dismiss or for summary judgment on the basis of mootness.  Plaintiff's Motion for TRO is before the Court, and at this stage in the proceedings, it is Plaintiff's burden to show it is facing certain harm that cannot be compensated with money damages, which it has not done.

Despite the hold having been lifted, Plaintiff continues to argue it is entitled to a TRO because Defendant Lazaroff may place another hold on the account, and he has threatened to spread false information in order to impair Plaintiff's ability to obtain credit in the future.  In its Reply Memorandum, Plaintiff makes statements such as, "[i]n the absence of an injunction, Defendants may continue to interfere with NCP's and/or ECPA's rights to pursue alternative processing arrangements"; and "Lazaroff has already demonstrated that he may seek a hold or reserve unilaterally, and with no express business purpose."  (ECF No. 26 at 4) (emphasis added). As is evident from these statements, these scenarios are only possibilities.  Even if the Court were to assume Defendant Lazaroff engaged in wrongful conduct in violation of the Operating Agreement, this is not enough to demonstrate irreparable harm.  Defendant Lazaroff may place another hold on the merchant account or follow through on his threat to disseminate false information as Plaintiff contends, but he may also have seen the error of his ways and will not violate the terms the Operating Agreement in the future.  Despite allegations of past wrongs, Plaintiff has not shown the harm it faces now is anything but speculative.

In addition, if Defendants were to violate the terms of the Operating Agreement in the future, any harm would not be felt immediately. There is no evidence in the record of the harm Plaintiff incurred as a result of the previous hold on the merchant account.  From all appearances, it would seem NCP's two cruises are still going forward.  But according to Plaintiff, if another hold were placed on the account or it were unable to obtain other financing, the cruises may need to be cancelled.  Plaintiff states that it will suffer substantial loss of goodwill if the planned theme cruises could not go forward.  While loss of goodwill can constitute irreparable harm, Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003), there is nothing to suggest that the two cruises would be cancelled immediately if Defendant Lazaroff were to place another hold on the merchant account.  Defendant Lazaroff placed the hold on the merchant account on August 18, 2021, and Plaintiff filed suit and requested a TRO on August 30, 2021, 12 days later.  If Defendant Lazaroff were to place another hold on the Braintree/PayPal account, and Plaintiff believed it was in violation of the Operating Agreement, Plaintiff could request additional relief at that time.

In sum, the Court finds Plaintiff has failed to demonstrate the threat of irreparable harm. Plaintiff has not shown that without the entry of an injunction, the company is facing certain and immediate harm that cannot be compensated with money damages. S.J.W. ex rel. Wilson, 696 F.3d at 778. As Plaintiff failed to show irreparable harm, the Court declines to address the other three Dataphase factors.

Finally, in its Reply Memorandum, Plaintiff states that the parties have engaged in settlement negotiations, and as recently as 10 days ago were very close to reaching a settlement agreement.  In the Court's view, this case would benefit from early referral to mediation.  The Court believes early referral to ADR will assist the parties in continuing their settlement

negotiations and may help the parties' resolve their dispute in an efficient and cost-effective manner.

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff's Motion for Temporary Restraining Order is **DENIED**.  (ECF No. 5)

**IT IS FURTHER ORDERED** that this case shall be referred to alternative dispute resolution, mediation, on **September 21, 2021**.  A separate Order Referring Case to ADR shall issue on that date.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this  _14th_   day of September, 2021.